No. 46,712

In the Matter of the Estate of WILLIS B. BARNES, Deceased. (John Barnes and Elmer Barnes, *Appellants,* JAMES M. BAILEY, Executor, *Appellee.*)

(512 P. 2d 387)

Opinion filed July 14, 1973.

*Kenneth Clark,* of Clark and Shelton, of Hill City, argued the cause, and *Norbert R. Dreiling* of Dreiling and Bieker, of Hays, was with him on the brief for the appellants.

*Donald L. Martin,* of Flood, Martin, Coffelt and Flood, of Ellis, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal by certain heirs at law from an order admitting a will to probate. The issue is whether procedural shortcomings, particularly deficient listing of heirs and service of notice of hearing, deprived the probate court and, upon appeal, the district court of jurisdiction to order such probate.

The parties have stipulated to the facts presented in the record on appeal.

Willis B. Barnes, a resident of Trego county, aged about seventy-seven years, died testate February 23, 1970. He left surviving him as his heirs at law two brothers, Elmer Barnes and Frank Barnes, and nine nephews and nieces, John Barnes, Lucille Syme, Helen Jessee, Flora Poulson, Lee Barnes, Wade Barnes, Edward Teeters, Harold Teeters and Raymond Teeters.

In his will, executed twelve days before his death, Willis B. Barnes disinherited all his heirs and left everything to two persons living in Ellis, Kansas, to whom he was not related.

On March 23, 1970, an Ellis county banker, who was named executor in the will, filed in the Trego county probate court a petition for the will's admission to probate. This petition named the two persons who were the legatees and devisees under the will but it listed as heirs at law of the decedent only his two brothers, Elmer Barnes, a resident of Longmont, Colorado, and Frank Barnes a resident of Delta, Colorado, and his nephew, John Barnes, a resident of Craig, Colorado. The petition made no mention of decedent's remaining eight nieces and nephews.

The probate court made an order fixing April 20, 1970, as the date for hearing the petition and directed that notice of the time and place of the hearing be given pursuant to K. S. A. 59-2209, as amended. Thereafter a notice of such hearing was duly published in a Trego county newspaper.

The petitioner's attorney (who later became and remains attorney for the executor) then filed an affidavit of mailing which stated that on March 27, 1970, he mailed a copy of the notice to both legatees and devisees and to the decedent's two brothers, Elmer and Frank Barnes. The affidavit also stated that on April 3, 1970, he became aware of Lucille Syme, a resident of Oakland, California, who was a child of a predeceased sister of the decedent, and he did on that date mail a notice to her, and on April 17, 1970, he became aware of of Helen Jessee, a resident of Tucson, Arizona, another such child, and on that date he mailed her a copy of the notice. The affidavit further stated these four were the only heirs whose names were known to affiant or to the petitioner. Noteworthy is the fact the affidavit of mailing made no mention of mailing to John Barnes, who was listed in the petition as an heir at law and nephew of the decedent, nor was mention made of decedent's remaining six nephews and nieces.

The probate court admitted the will to probate April 20, 1970, and named the petitioner, James M. Bailey, as executor.

Thereafter, first in May, 1970, and later in July, 1970, the attorney for the executor mailed to Elmer and Frank Barnes and to the two nieces last mentioned notices of hearings in the probate court on petitions in the estate to allow a demand and for authority to sell personal property. The affidavits of mailing omitted mention of John Barnes and the missing six nephews and nieces.

On December 28, 1970, one brother, Elmer Barnes, and one nephew, John Barnes, filed their notice of appeal to the district court from the order admitting the will to probate. Elmer and John later filed in district court an answer in which they alleged the following:

"(1) That the Probate Court of Trego County, Kansas had no jurisdiction to admit said Will to Probate on April 20, 1970, for the reason that petitioner did not comply with the provisions of K. S. A. 59-2209 in the following particulars:

"a. Said Petitioner made no diligent effort to secure the names of heirs of Willis B. Barnes, deceased, who would inherit under the laws of descent and distribution and failing to list the same in said Petition for Probate of Will; that such names could have been easily ascertained by proper inquiry.

"b. Petitioner failed to mail Notice of Hearing on Petition for Probate of Will to Appellant, John Barnes, although his name was listed as an heir on said Petition for Probate of Will.

"c. That mailings of Notice of Hearing on Petition for Probate of Will to Mrs. Lucille Syme and Mrs. Helen Jessee, all as shown by Affidavit of mailing, copy of which is attached hereto as a part hereof, were insufficient to establish jurisdiction in the Probate Court.

"d. No Notice of Hearing on Petition for Probate of Will was given Flora Paulson, Lee Barnes, or Wade Barnes, children of John Barnes, predeceased brother of decedent or to Edward Teeters, Harold Teeters or Raymond Teeters, children of Carie E. Teeters, predeceased sister of decedent."

The executor then filed in district court a pleading in which he alleged that both he and his attorney had made diligent effort to secure the names and addresses of the heirs at law of Willis B. Barnes but that Elmer Barnes, John Barnes and other interested heirs at law had refused to furnish information and it had been impossible to determine such names and addresses without the co-operation of Elmer, John and other heirs to whom inquiry had been made; that notice of the hearing on the petition to probate the will in fact was given to John Barnes in accord with K. S. A. 59-2209, as amended, and the affidavit of mailing previously filed was in error to that extent; that notice of hearing on the petition to probate was given to Lucille Syme and Helen Jessee immediately upon petitioner's discovery that they were heirs at law. The pleading further admitted no notice was given to the remaining six nephews and nieces but this was alleged to be due to the fault of Elmer and John and other interested (but unnamed) heirs at law.

Elmer and John then sought summary judgment in their favor on the ground the probate court's order admitting the will to probate was void for lack of jurisdiction due to want of notice in compliance with 59-2209. The trial court denied this motion. In doing so it took cognizance of the pleading filed by the executor in which he asserted a copy of the notice of the hearing in probate court on the petition to probate the will had in fact been mailed to John, under which assertion, the court noted, the filing by the executor of an amended affidavit of mailing stating the fact as to John would be sufficient even upon hearing in the district court but that his was not necessary inasmuch as the hearing in district court was trial *de novo* invoked at the request of Elmer and John.

Later, and prior to trial, Elmer and John filed a motion to vacate the order denying summary judgment to which were attached certain affidavits: Elmer's affidavit denying that any request for information was ever made to him; one by John denying he had ever received any kind of notice by mail or otherwise from the executor or his attorney; an affidavit of a former neighbor to the decedent naming several persons in Trego county who could have given information as to the names and addresses of the decedent's heirs, including the agricultural tenants on decedent's real estate.

This motion was denied and the parties then entered into the following agreement:

## "STIPULATION

"The parties stipulate that at the trial of this matter the appellee will present the same evidence as was previously submitted to the Trego County Probate Court on April 20, 1970, and as is more fully recited in the affidavits of proof of will executed by witnesses Dorothy Kippes, John H. Rupp and Alma Kelly, same being made a part hereof by reference.

"The appellants will stand on the jurisdictional question and without waiving any of their rights to appeal on said question or otherwise, will present no evidence at said trial.

"There will be no further evidentiary matters presented at said trial, and the parties hereby submit the matter for the decision of the court."

Upon this submission the trial court found the proffered will was valid in all respects and admitted it to probate. Additionally the trial court affirmed and approved all orders previously entered in the proceeding by the probate court. Thereupon Elmer and John perfected an appeal to this court.

Appellants present three grounds for reversal: (1) The probate court lacked jurisdiction to admit the will to probate because of procedural defects; (2) for the same reasons the district court in turn had no jurisdiction; and (3) the court erred in holding that K. S. A. 59-2209, as amended, does not require mailing to a party in order to obtain jurisdiction for the purpose of admitting a will to probate, or, in the alternative, if such statute does not so provide, the court erred in holding that it does not violate rights of appellants under the federal and state constitutions.

Appellants advance two bases for their contention the probate court lacked jurisdiction to admit the will to probate. First, they assert failure to list all of the decedent's heirs at law in the petition to probate the will deprived the court of jurisdiction to act. The contention is without merit. Under the provisions of K. S. A. 1972 Supp. 59-2203 the primary jurisdictional facts empowering a probate court to order probate of a decedent's will are either that the decedent was a resident of the particular county at the time of his death or that he left an estate within the county to be administered. Under the stipulated facts here Willis B. Barnes died a resident of Trego county, owning an estate in that county, and the probate court clearly had jurisdiction of the subject matter of the proceeding. K. S. A. 1972 Supp. 59-2220 states that a petition for the probate of a will shall satisfy the statutory requirements of a petition for administration. K. S. A. 59-2219 provides that a petition for adminis-

tration shall state the "names, ages, residences, and addresses of the heirs of the decedent so far as known or can with reasonable diligence be ascertained". The question of the effect of failure to list heirs in a petition for administration is commented upon in 3 Bartlett's Kansas Probate Law and Practice, rev. ed., § 1223, as follows:

"Since the proceedings for the appointment of an administrator are adversary and not ex parte, it should be stressed that care should be exercised in ascertaining the names and whereabouts of the heirs of the decedent and the inclusion of their names and addresses in the petition in order that proper notice may be given them of the time and place of the hearing. But when such matters are not known, they cannot and need not be set forth. And it has been held that the requirement as to names, residences, and addresses of the heirs, devisees, and legatees is directory only, and not jurisdictional. If a petition in regular form is filed, stating correctly the name of the decedent, the court has jurisdiction even though the persons named as heirs are not in fact heirs." (pp. 69-70.)

The statutory provision for stating the names, etc., of heirs of a decedent in a petition to probate a will by its very terms contemplates no more than a listing of heirs whose names, ages and whereabouts are known to the petitioner or by the exercise of reasonable diligence should have been known to him. Consequently the jurisdiction of a probate court to act upon a petition to probate a will does not depend upon whether or not all heirs are named in the petition.

Here the petition listed as heirs at law the decedent's two brothers, Elmer and Frank Barnes, and his nephew, John Barnes. It was valid upon its face and conformed in all respects to statutory requirement. Cognizance may be taken of an initial showing on behalf of the executor of diligent inquiry to ascertain the names of all heirs. Failure to list all persons who were in fact heirs of the decedent, standing alone, did not deprive the probate court of its power to admit the will to probate.

Second, appellants contend the probate court lacked jurisdiction to probate the will because not all the heirs were notified of the hearing on the petition to admit it. Concededly, six nephews and nieces were not notified of the hearing (the record before us does not reveal their places of residence or addresses).

K. S. A. 59-2222 provides:

"When a petition for the probate of a will . . . is filed, the court shall fix the time and place for the hearing thereof, notice of which shall be given pursuant to [59-2209] unless the court shall make an order to the contrary. . . ."

K. S. A. 1972 Supp. 59-2209 calls for notice to be published once a week for three consecutive weeks in a county newspaper and further that,

". . . within seven (7) days after first published notice the petitioner shall mail or cause to be mailed a copy of the notice to each heir . . . whose name and address are known to him. . . ."

Here again our statutory scheme indicates that the term "known" as used in 59-2209 must be understood to mean an heir known to the petitioner or an heir who by the exercise of due diligence should have been known to him. In *Carter v. Zahn,* 37 F. R. D. 556 (DC, Kan., 1965) in a somewhat analogous situation it was held that the term "known" used in a Kansas tolling statute provided that time of absence of a defendant from the state shall not be computed as any part of the period within which action must be brought but that such section shall not apply to extend the period of limitation as to any defendants whose whereabouts are known, means known to plaintiff or by the exercise of due diligence should have been known to plaintiff.

In 3 Bartlett's, *supra,* § 1230, this discussion on the effect of failure to give notice to certain persons appears:

"In testate estates, the heirs, devisees, and legatees are likewise interested parties and are entitled to notice, unless waived by them. But the notice need be given only to the persons required by statute to be notified, that is, to the heirs, devisees, and legatees of the decedent.

"However, the heirs, devisees, and legatees of a decedent are not judicially determined until the final settlement of the estate; and only reasonable diligence is required to ascertain the heirs, devisees, and legatees, at the commencement of the proceeding, for the purpose of giving notice to them. An analysis of the code provisions supports this view. These provisions are: (1) the petition shall state the names and addresses of the heirs, devisees and legatees of the decedent so far as known or can with reasonable diligence be ascertained; (2) notice, unless otherwise directed by the court, shall be given by publication of all persons concerned, and by mailing to each heir, devisee, and legatee whose name and address are known to the petitioner. The word 'known' as used in the statute means known to the petitioner after the exercise of reasonable diligence.

"In a well reasoned opinion it was said: 'The jurisdiction of the court over the subject-matter is provided for by the statute requiring that when a petition is filed it shall contain the names of the heirs at law, devisees and legatees. The act places on the petitioner the duty of naming all the heirs at law of the deceased, but so say that it requires him to name heirs at law of whose existence he knows nothing and of which he upon diligent inquiry cannot learn would be to require that the petitioner do the impossible. Where it is shown that the petitioner diligently and in good faith has endeavored to learn the names and addresses of all of the heirs at law of the deceased,

the court before whom the petition is filed has no way of knowing, except on the hearing thereof, that there exists heirs at law who have not been made parties, and, it appearing to the court that all had been made parties the statute places on the court the imperative duty to proceed to a hearing on the petition, and for that purpose confers on the court jurisdiction of the subject-matter and of the parties notified. To hold otherwise would be to say that, because an unknown heir at law might possibly appear, the court cannot take jurisdiction of the subject-matter in any case without notice to unknown heirs. Such a procedure is not provided for or contemplated by the act except in cases where the petition states that there are unknown heirs. Such a rule would require notice by publication in every case, in spite of the fact that the petition and proof showed there were no unknown heirs at law. To say that, notwithstanding good faith and diligence on the part of the petitioner and proof before the court, all of the heirs at law had been made parties to the petition, an heir not made a party may, years afterwards, set aside the entire probate of the will on the ground that the court had no jurisdiction whatever to probate the will, would be to announce a rule which would result in unsettling estates and destroying titles years after the probate of wills and the closing of estates. Such, we believe, could not have been the contemplation or intention of the legislature.'

"If the statutory requirements relating to notice are complied with in good faith, it appears that any decree or order based upon such notice is not subject to attack for failure to mail notice to some heir or beneficiary who was unknown to the petitioner at the time of the proceedings. The notice by publication as prescribed by statute is constructive notice to all persons interested. It is said that 'unless the necessary parties in such cases could be brought before the court by publication, there would be in many cases an impossibility of doing it at all.'" (pp. 75-77.)

(See also further discussion contained in section 1233 of the same work.)

No contention is made that the notice was not properly published. A showing of good faith efforts at ascertaining heirs has already been noted. Excepting for the moment the alleged failure to mail notice to John, an affidavit revealed mailing of notice to those heirs known after the exercise of reasonable diligence and this proof of service was duly approved by the probate court. All statutory requirements respecting notice appear to have been met. Hence we hold that failure to mail copy of the published notice of hearing of the petition to probate court to an heir who, after the exercise of due diligence, was unknown to the petitioner did not deprive the probate court of jurisdiction to hear the petition.

Appellant John Barnes was listed as an heir in the petition but the affidavit of mailing did not state a copy was mailed to him. Appellee later asserted the affidavit was in error in that he had in fact mailed notice to John. John in turn disputed this later

assertion. We think any irregularity falls within the purview of K. S. A. 59-2211 which in pertinent part provides:

"No defect in any notice nor in the service thereof, not affecting the substantial rights of the parties, shall invalidate any proceedings after such notice and the proof of service thereof shall have been approved by the court."

John has made no showing anywhere along the line of prejudice to his substantial rights.

Appellants' second contention—that the district court had no jurisdiction to admit the will to probate—is premised solely on their assertion the probate court was without such jurisdiction. They cite and rely on *In re Estate of Crump,* 161 Kan. 154, 166 P. 2d 684, in which this court held that inasmuch as a probate court had no jurisdiction to anul a marriage, upon an appeal from such a judgment in probate court a district court acquired no jurisdiction of such an action. That is not comparable to our situation here where, upon the showing made in the probate court, we have upheld that court's power to act and there is no consequent want of district court authority to act for the reason asserted. This, however, is not the end of the matter in view of the shoddy practice revealed after the case got to the district court, which cannot be upheld.

As indicated Elmer and John Barnes filed an answer in district court setting out procedural defects. They alleged due diligence had not been used to obtain the names of the decedent's heirs and they specifically pointed out six named nephews and nieces, who were heirs at law, to whom notice of hearing on the petition for probate of the will had not been given. These heirs are parties interested in the probate of the decendent's will, their position must be treated as adverse to the admission to probate of such will, yet their existence was ignored in the district court proceedings and no notice has ever been given them nor has any such effort been made.

As already indicated in the quotation from Bartlett, supra, proceedings of this character are adversary in nature and care must be exercised in ascertaining the names and whereabouts of heirs so that proper notice may be given them respecting the proceedings. Beyond this, we have firmly held in *Pierce v. Board of County Commissioners,* 200 Kan. 74, 434 P. 2d 858, and in *Chapin v. Aylward,* 204 Kan. 448, 464 P. 2d 177, that the requirements of due process contemplate that, where feasible, notice of legal proceedings be given by means reasonably calculated to inform all parties

having legal rights which might be directly and adversely affected thereby; further, where the names and addresses of adverse parties are known or easily ascertainable, notice of pending proceedings by publication service, alone, is not sufficient to satisfy the requirements of constitutional due process.

Once it became apparent at the district court level that all parties interested in the probate of the will and whose rights might thereby be affected, had not been notified of the proceeding, it became imperative that such parties be so notified if reasonably possible to do so. Consequently, we believe the trial court erred in proceeding to determine the appeal as it did without notice to these missing heirs or, in the alternative, a showing why they could not be so notified.

It may be noted that once an appeal from probate court has been duly perfected the district court has and exercises the same jurisdiction as though the controversy had been commenced in that court and the issues are determined in trial *de novo*. Pleadings may be filed or amended and trial in, and issues to be considered by, the district court are neither abridged nor restricted by any failure to appear or by the evidence introduced, or the absence or insufficiency thereof, in the probate court (K. S. A. 1972 Supp. 59-2408; *In re Marsolf*, 200 Kan. 128, 434 P. 2d 1010). An appeal from an order in probate court admitting a will to probate does not, however, suspend the operation of that order until determination of the appeal (K. S. A. 59-2407).

The judgment is reversed and the cause remanded to the trial court with directions to set aside its order determining the appeal from probate court and to issue an order that appellee give notice to all the heirs of Willis B. Barnes, deceased, of the hearing of the appeal in district court and make proof of same, in accord with constitutional due process requirements before further proceedings in the appeal are conducted.

APPROVED BY THE COURT.

SCHROEDER, J., concurring: The court in its opinion side steps a golden opportunity to give the bench and bar some meaningful guidance in probate practice in an area which is vitally important to attorneys examining real estate titles. The case is important to probate practice because it touches a critical point in probate proceedings. It deals with the question of *jurisdiction* of the probate court over *necessary parties* to the proceedings.

While I agree with the abstract propositions of law stated by the court in each paragraph of the syllabus, the opinion itself gives only lip service to such law which it conveniently fails to apply to the *stipulated facts* at the probate court level. The situation is confusing because proceedings were conducted in both the probate court and in the district court. The court's opinion purports to cover the law at both levels by catapulting into the proceedings in the district court, after reviewing the law relative to the proceedings in the probate court. It is only in the district court that the Supreme Court applies the due process requirements of notice.

The court's opinion relative to the proceedings in the probate court flies squarely into the face of *Walker v. Hutchinson City*, 352 U. S. 112, 1 L. Ed. 2d 178, 77 S. Ct. 200; *Pierce v. Board of County Commissioners*, 200 Kan. 74, 434 P. 2d 858; and *Chapin v. Aylward*, 204 Kan. 448, 464 P. 2d 177. These cases adhere to the doctrine that where the names and addresses of parties affected by litigation are known or are easily ascertainable, notice of pending legal proceedings by publication service alone is not sufficient to satisfy constitutional due process requirements.

In this case if the will of Willis B. Barnes, deceased, is valid strangers receive the property in the estate, but if it is invalid for any reason his heirs would inherit his property. His heirs therefore are vitally interested in proceedings concerning the admission of the will of Willis B. Barnes, deceased, to probate. *The heirs are adversaries and necessary parties to this litigation.*

The critical issue presented by this appeal, at both the probate court and district court levels, is whether the petitioner (subsequently appointed executor) or his attorney exercised *reasonable diligence* in ascertaining the names and addresses of the heirs of Willis B. Barnes, deceased, who as adversaries and necessary parties to the proceedings were entitled to notice of the proceedings commensurate with the requirements of state and federal due process. In my opinion the petitioner (executor) and his attorney were negligent and utterly failed to exercise reasonable diligence in ascertaining the names and addresses of such heirs. To give substance to this charge it will be necessary to chronologically present the stipulated facts and apply the law, in my opinion, as it should be.

The Probate Code specifically requires that a petition for the

probate of a will must state the name, residence, and date and place of death of the decedent; *the names, ages, residences, and addresses of the heirs of the decedent so far as known or can with reasonable diligence be ascertained.* (K. S. A. 59-2219 and 59-2220.)

On the 23rd day of March, 1970, the probate court ordered a hearing on the petition to admit the will of Willis B. Barnes, deceased, to probate and directed that notice be given pursuant to the provisions of K. S. A. 59-2209.

The provisions of K. S. A. 59-2209, as amended in 1965, here applicable, read:

"When notice of hearing is required by any provision of this act, by specific reference to this section, such notice shall be published once a week for three (3) consecutive weeks in some newspaper of the county authorized by law to publish legal notices. The first publication shall be had within ten (10) days after the order fixing the time and place of the hearing; and within seven (7) days after first published notice the petitioner *shall mail or cause to be mailed a copy of the notice to each heir,* devisee, and legatee or guardian and ward or conservator and conservatee or guardian *ad litem* as the case may be, other than the petitioner, *whose name and address are known to him.* The date set for the hearing shall not be earlier than seven (7) days nor later than fourteen (14) days after the date of the last publication of notice." (Emphasis added.)

The court in its opinion clearly states the law here applicable when it says:

"Here again our statutory scheme indicates that the term 'known' as used in 59-2209 must be .understood to mean an heir known to the petitioner *or an heir who by the exercise of due diligence should have been known to him.* . . ." (Emphasis added.)

Clearly the question presented by this appeal is *whether* the petioner, or his attorney acting on his behalf, exercised reasonable diligence in ascertaining the names and addresses of the heirs of Willis B. Barnes, deceased.

The *stipulated facts* in this case clearly show the foregoing issue, which is the subject of this litigation, was never determined either in the probate court or in the district court. This is the specific point upon which the issues were framed by the pleadings in the district court.

*The only information supplied to this court by the stipulated facts as to what transpired at the hearing in the probate court to admit the will to probate is the following:*

"The Petition to admit said Will to probate was heard in the Probate Court on April 20, 1970. At this hearing, the evidence of all of the subscribing

witnesses to the Will, to-wit: John H. Rupp, Dorothy Kippes and Alma Kelly, was reduced to writing and filed. Such written testimony establishes the name and residences of the subscribing witnesses, the acquaintance of the witnesses with Willis B. Barnes, and the fact that each of said witnesses was present at Ellis, Kansas, on February 11, 1970, and saw Willis B. Barnes sign said Will and heard him publish and declare this to be his last will and at his request, in his presence and in the presence of each other, signed the Will as a subscribing witness; that Willis B. Barnes was about 77 years of age and was of sound mind and memory and not under any restraint or undue influence.

"On April 20, 1970, the Probate Court found that Willis B. Barnes died on February 25, 1970, at Hays, Kansas, admitted said Will to probate and appointed James M. Bailey as executor without bond."

Now to digress shortly, based on the foregoing stipulated facts the court concludes in its opinion: "Cognizance may be taken of an initial showing on behalf of the executor of diligent inquiry to ascertain the names of all heirs". With *nothing* in the record to support it this is indeed a bold assumption. Perhaps prior to the decisions in *Pierce v. Board of County Commissioners,* supra, and *Chapin v. Aylward,* supra, such presumption could be indulged, but surely not after their pronouncement. The court further states in its opinion: "No contention is made that the notice was not properly published. A showing of good faith efforts at ascertaining heirs has already been noted. Excepting for the moment the alleged failure to mail notice to John, an affidavit revealed mailing of notice to those heirs known after the exercise of reasonable diligence and this proof of service was duly approved by the probate court". There is *absolutely nothing in the stipulated facts* to warrant the court's conclusion that notice was mailed to the known heirs "after the exercise of reasonable diligence", or that "proof of service was duly approved by the probate court" relative to the admission of the will to probate in the probate court.

Prior to the hearing in the probate court Donald L. Martin, attorney for the petitioner James M. Bailey, filed an affidavit of mailing which recited the facts as related in the court's opinion. It is to be noted that in the affidavit the petitioner's attorney stated he mailed a copy of the notice to both legatees and devisees and to the decedent's two brothers, Elmer and Frank Barnes. The petition listed the decedent's nephew, John Barnes, as an heir but he was not named in the affidavit as having been mailed notice of hearing. The affidavit also stated that on April 3, 1970, the affiant became aware of Lucille Syme, a resident of Oakland, California, who was a child of a predeceased sister of the decedent,

and he did on that date mail a notice to her, and on April 17, 1970, he became aware of Helen Jessee, a resident of Tucson, Arizona, another such child, and on that date he mailed her a copy of the notice. The affidavit further stated "such persons being all of the heirs, legatees and devisees of Willis B. Barnes, deceased, whose names and addresses are known to the petitioner or to affiant".

No reference was made in the affidavit whatever to John Barnes, or to the decedent's remaining six nephews or nieces who were heirs at law of Willis B. Barnes, deceased.

Subsequent to the admission of the will to probate James M. Bailey, executor, filed a petition for the allowance of certain demands and on the 25th day of May, 1970, his attorney, Donald L. Martin, filed an affidavit of mailing similar to the affidavit filed prior to the hearing for the admission of the will to probate. This affidavit also omitted the name of John Barnes and six heirs of the decedent who were his nephews and nieces, but it did name Lucille Syme and Helen Jessee.

The parties named in that affidavit as having been mailed notice were said to be all of the interested creditors and all heirs, legatees, and devisees "who are known to the executor or to the affiant."

The executor thereafter filed a petition for authority to sell personal property and his attorney, Donald L. Martin, filed an affidavit of mailing notice which, insofar as is material herein, is similar to the prior affidavit filed in connection with the petition for the allowance of demands.

The foregoing affidavits filed in the probate court by Donald L. Martin are material only as evidence to show the shoddy practice in giving notice to the necessary parties in this case.

Actually, what the appellants did in the probate court is immaterial to a determination of the issue here presented because they appealed the matter to the district court.

The appeal taken by John Barnes and Elmer Barnes from the admission of the will to probate to the district court was perfected within the period of nine months as authorized by K. S. A. 59-2404, here applicable.

Once an appeal has been duly perfected, the district court has, and exercises, the same jurisdiction and power as though the controversy had originally been commenced in that court. Pleadings may be filed or amended, and the trial in, and issues to be con-

sidered by, the district court are neither abridged nor restricted by any failure to appear, or by the evidence introduced, or the absence or the insufficiency thereof, in the probate court. (K. S. A. 1972 Supp. 59-2408; and *In re Marsolf*, 200 Kan. 128, 434 P. 2d 1010.) An appeal from an order, other than an order admitting a will to probate, suspends the operation of any order, judgment, decree, or decision appealed from until the appeal is determined or the district court shall otherwise order. (K. S. A. 59-2407.) The failure of the statute to suspend the order of the probate court admitting a will to probate does not, however, affect the authority of the district court to determine the issues on appeal from the probate court *de novo*.

In 1944 the case of *In re Estate of Grindrod*, 158 Kan. 345, 148 P. 2d 278, held that the district court did not acquire jurisdiction to try a will contest action on appeal from an order admitting a will to probate where the opponent of the will, after having received the required notice of the time and place of hearing for probate, made no objections of any kind or character to the validity of the will or to its probate and took no steps in the probate court to vacate or set aside the order of probate. This case was *laid to rest* by the amendment of the applicable statute which now appears as K. S. A. 59-2404, and it was so held in the case of *In re Marsolf*, supra.

To resolve the issue here presented we must look solely to the proceedings conducted in the district court.

In the district court, John Barnes and Elmer Barnes filed an answer in which they alleged among other things:

"(1) That the Probate Court of Trego County, Kansas had no jurisdiction to admit said Will to Probate on April 20, 1970, for the reason that petitioner did not comply with the provisions of K. S. A. 59-2209 in the following particulars:

"a. Said Petitioner made no diligent effort to secure the names of heirs of Willis B. Barnes, deceased, who would inherit under the laws of descent and distribution and failing to list the same in said Petition for Probate of Will; *that such names could have been easily ascertained by proper inquiry.*

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"d. No Notice of Hearing on Petition for Probate of Will was given Flora Poulson, Lee Barnes, or Wade Barnes, children of John Barnes, predeceased brother of decedent or to Edward Teeters, Harold Teeters or Raymond Teeters, children of Carie E. Teeters, predeceased sister of decedent." (Emphasis added.)

On the 8th day of October, 1971, the executor filed a pleading in the district court alleging:

". . . *[T]hat both he and his attorney made diligent effort to secure names and addresses of Willis B. Barnes, Deceased,* but that Appellants and other interested heirs-at-law refused to furnish such names and addresses and it was impossible to ascertain and determine such names and addresses without the cooperation of the Appellants and other heirs-at-law to whom inquiry was made; . . . that it was *admitted* that no Notice of Hearing was given to Flora Paulsen, Lee Barnes, Wade Barnes, Edward Teeters, Harold Teeters and Raymond Teeters; but that such failure to give notice was the fault of Appellants and other interested heirs-at-law. . . ." (Emphasis added.)

Thereafter on the 18th day of October, 1971, the appellants filed a motion for summary judgment seeking to have the order of the Probate Court of Trego County, Kansas, made on the 20th day of April, 1970, admitting the will to probate set aside. It was alleged the order was void because the probate court *had no jurisdiction to admit said will to probate for failure of the petitioner to comply with the provisions of K. S. A. 1970 Supp. 59-2209.*

On the 2nd day of November, 1971, the district court overruled the appellants' motion for summary judgment. In doing so it made specific findings and rulings which it set forth in its journal entry. Apparently the trial court failed to grasp the significance of the appellants' appeal. In its journal entry the trial court recited:

"No. 1

"The appellants contend, in their brief, that the Probate Court lacked jurisdiction and that the order of April 20, 1970, admitting the will to probate is void because the affidavit of mailing notice of hearing dated April 20, 1970, fails to show that notice had been mailed to John Barnes, one of the two appellants. The record shows John Barnes was listed as an heir in the petition for probate but is omitted from the affidavit of mailing notice.

"This essentially is the extent of basis for the appellants contentions, *although the appellants also state in their brief that several other heirs of the decedent were not named in the petition nor in the affidavit of mailing notice.*

"No. 2

"The respondent Executor in his answer and brief, contends that John Barnes was in fact mailed a copy of the notice of hearing but his name was erroneously omitted from the affidavit of mailing. *The respondent further contends* that all heirs known to the petitioner, after diligent inquiry, were listed in the petition and were mailed copies of notice of hearing, but that the list of heirs was not complete at the outset because of failure of appellants to cooperate in answering questions regarding names and addresses and extent of heirs of the decedent." (Emphasis added.)

The district court then proceeded with its preoccupation over the notice to John Barnes and concluded:

"No. 6

"The case is in this, the District Court, for trial de novo at the specific re-

quest of the appellants, John Barnes and Elmer Barnes, by their notice of appeal, timely filed in the Probate Court on January 6, 1971.

"John Barnes has submitted to the jurisdiction of the Court over his person by his notice of appeal requiring trial de novo in the District Court on the petition for probate of the will. Proof of notice to John Barnes as well as Elmer Barnes, is now unnecessary as they are themselves affirmatively invoking the jurisdiction of the Court for trial de novo.

"No. 7

"*For the above stated reasons* the Court finds the Motion for Summary Judgment filed by the appellants on October 18, 1971, should be overruled, and so orders." (Emphasis added.)

On the record here presented concerning the point under discussion, the appellants by their motion for summary judgment admit *only the well pleaded facts* of the executor's pleadings— "that the appellants and other interested heirs-at-law refused to furnish such names and addresses", "such" referring to the "names and addresses of Willis B. Barnes, Deceased." (See quoted pleading, *supra.*) Even assuming the executor intended to say "the names and addresses of the heirs of Willis B. Barnes, Deceased" this fact does not warrant the legal conclusion that "it was impossible to ascertain and determine such names and addresses without the cooperation of the appellants and other heirs-at-law to whom inquiry was made"; or the legal conclusion that diligent inquiry was made to ascertain the names and addresses of the heirs of Willis B. Barnes, deceased. (See, Gard, Kansas Code of Civil Procedure, § 60-256(a) p. 257.)

In fact, in my opinion, the above allegation of fact warrants a legal conclusion to the contrary—that due diligence was not exercised in the matter by the appellee or his attorney.

At this point, viewing the record on a motion for summary judgment by resolving all doubts against the moving party, there remained an issue of fact to be determined by the pleadings— whether the appellee, or his attorney acting in his behalf, made diligent inquiry to ascertain the names and addresses of the heirs of Willis B. Barnes, deceased. The district judge, however, side stepped this issue and overruled the motion for other reasons.

Thereafter the case was again ordered set for pre-trial conference on November 20, 1971. Prior thereto on November 20, 1971, the appellants filed a motion requesting the court for an order setting aside the ruling and judgment entered on the 2nd day of November, 1971, denying the appellants' motion for summary judgment,

*and in connection therewith the appellants filed several affidavits
indicating the ease with which the executor or his attorney could
have ascertained the names of the heirs of Willis B. Barnes, de-
ceased, had they exercised any diligence whatever.* In these affi-
davits the names of the decedents' brothers and sisters both living
and deceased were named together with all of the nieces and
nephews who were heirs of the decedent.

In the motion the appellants also alleged that in accordance
with the provisions of K. S. A. 1970 Supp. 60-212(*b*) they were
entitled to raise questions of either lack of jurisdiction over the
subject matter, or lack of jurisdiction over the person, either by
motion or by answer.

One of the affidavits filed with the appellants' motion was by
Elmer Barnes, an heir of the decedent and a surviving brother.
In the affidavit he denied that he had ever been requested for the
names or addresses of the heirs-at-law of Willis B. Barnes, deceased.
Another affidavit was by Art Baugher, for many years a neighbor
to Willis B. Barnes, who stated that both he and other neighbors
adjacent to the property now in the estate could have furnished
the names and addresses of some of the heirs of Willis B. Barnes,
deceased. He also named Mr. and Mrs. Delbert Dietrich who at
the death of Willis B. Barnes, deceased, were the agricultural
tenants on the real estate belonging to the decedent, stating that
the names and addresses of some of the heirs were known to them.

At the pre-trial set for November 30, 1971, the parties entered
into a stipulation reciting the facts upon which the matter was
submitted to the district court. Insofar as here material, the ap-
pellants stipulated they would stand on the jurisdictional question
and without waiving any of their rights to appeal on said question
or otherwise, they would present no evidence at the trial con-
cerning the admission of the will to probate.

After submission of the matter to the district court on the 30th
day of November, 1971, upon the stipulated facts, the district court
admitted the will to probate as valid in all respects. It further
affirmed and approved all orders heretofore written and entered
by the Probate Court of Trego County, Kansas, and taxed the
costs to Elmer Barnes and John Barnes.

From the foregoing stipulated facts it is abundantly clear that
neither the probate court *nor the district court at any time deter-
mined whether reasonable diligence had been exercised by the*

*executor or his attorney in ascertaining the names and addresses
of the heirs of Willis B. Barnes, deceased,* who were entitled to
notice of the proceedings. That issue was clearly raised by the
appellants at all points throughout the proceeding in the district
court. It is that point upon which they stand on this appeal.

It can hardly be said that the mere recital of diligence in
an answer in the district court by the appellee, which was designed
to frame the issue, supplies a finding by the trial court that
diligence has been exercised. The recital by the trial court in its
journal of the appellee's *contention* regarding diligence in ascertaining the names and addresses of the heirs of the decedent does not
supply a finding by the trial court that diligence has been exercised.

The Supreme Court of Kansas has firmly said in both *Pierce v.
Board of County Commissioners,* supra, and *Chapin v. Aylward,*
supra, that where the names and addresses of adverse parties are
known or are easily ascertainable, notice of pending legal proceedings by publication service alone, is not sufficient to satisfy the requirements of due process under the Fourteenth Amendment to the
federal constitution or § 2 of the Bill of Rights of the Kansas
Constitution. *Walker v. Hutchinson City,* supra, confirms this
requirement.

Willis B. Barnes, deceased, was survived by the following
heirs:

"Frank Barnes, a Brother;

John Barnes, *Flora Poulsen, Lee Barnes,* and *Wade Barnes,* nephews and
nieces, they being the children of John Barnes, a deceased brother
of said decedent;

*Edward Teeters, Harold Teeters* and *Raymond Teeters,* Nephews, they
being the sons of Carrie E. Teeters, a deceased sister of said decedent;

Lucille Syme and Helen Jessee, nieces, they being the children of Josephine
Kinney, a deceased sister of said decedent;

Elmer Barnes, . . . a brother of said decedent." (Emphasis added.)

Insofar as the record herein discloses the names of the heirs
of Willis B. Barnes, deceased, above emphasized have never received
notice by mailing or otherwise of the proceedings here in litigation.
Absent a showing of reasonable diligence (a question here in litigation) publication notice is insufficient because it is violative of due
process. It seems to me the preoccupation of the district judge with
jurisdiction over John Barnes in this action obscured the real issue
to be determined in the district court.

Assuming the opinion of the court relative to the law and the facts at the probate level is applied in practice to a similar set of facts in the future, without reference to the court's disposition of this case at the district court level, a few pertinent questions must be asked to test the law. For example, what would the Supreme Court say if an heir, who had never been notified of the proceedings to admit a will to probate, came into court at a later date collaterally attacking the admission of the will to probate and discloses his standing in the matter? Would he be permitted by the court to prove, by his unrefuted evidence, that reasonable diligence had not been exercised by the petitioner or his attorney in ascertaining the names and addresses of the heirs of the decedent who were vitally interested in the admission of the decedent's will to probate? Or would he be denied the right to proceed on the ground that his rights had been foreclosed in the proceedings conducted in probate court? Bear in mind the probate court made no inquiry concerning reasonable diligence; it made no finding relative to the notice given the heirs, and the record is silent as to whether the probate court approved or disapproved the notice. In my opinion, an attorney carefully examining title to real estate affected by proceedings disclosing such infirmities would refuse to approve such title.

It seems to me that either the court has misconceived the vital issue in this case, or it is putting its stamp of approval on the negligent practice of the law. The court has before it a beautiful set of stipulated facts to clarify an area of confusion and uncertainty in probate practice.

In an effort to find a solution to the problems created for legal practitioners examining real estate titles by the decision in *Chapin v. Aylward,* supra, the Kansas Judicial Council on July 10, 1970, undertook to study the matter through an advisory committee of attorneys, who were experts on real estate titles. After almost two years of study the Council rejected the various suggestions of its advisory committee,—of proposed legislation or proposed Supreme Court Rule—on the ground that most suggestions were too restrictive or limiting in scope, and that no suggestion was better than a restatement of the law itself. Accordingly, it was felt, the solution was in the bosom of the Supreme Court through its decision making powers on a case by case basis.

As suggested by the stipulated facts in this case, and fortified with the Kansas Judicial Council Study, I would assert the follow-

ing minimum requirements to establish jurisdiction over the necessary parties in the probate court.

Where a will is offered for probate and jurisdiction over the heirs (or any of them), who are necessary parties, is sought by serving them with process solely by publication, the probate judge (here the district judge on appeal) *shall* conduct an inquiry and examine the petitioner, or an attorney acting in his behalf, to determine whether he has made a diligent and meaningful search of all reasonably available sources of information at hand to ascertain the names and mailing addresses of the heirs of the decedent, and in so doing the judge *shall* require evidence of diligence as he may deem necessary in the circumstances.

As evidence of diligence, the judge may consider whether such primary sources as the records of the county clerk, the county assessor, the county treasurer, the register of deeds, the district court, and the probate court, where applicable, have been examined, and whether such secondary sources as the city, county or municipal directories of the county where the decedent resided and his property is located have been examined, to ascertain the names and addresses of the heirs of the decedent. As further evidence of diligence, as applied to the stipulated facts in this case, the judge should have ascertained whether the tenant on the decedent's land during his life time, the neighbors in the vicinity of the decedent's land, and the *known* heirs of the decedent were examined to determine the names and addresses of all of the heirs of the decedent.

If, after hearing the evidence, the judge finds that due diligence has been exercised in conducting a meaningful search of reasonably available sources at hand, *he shall cause a finding to be entered in the journal entry of judgment* which shall be substantially as follows:

That the court, upon inquiry into the sufficiency of the petitioner's search for the whereabouts and addresses of the heirs-at-law of the decedent served by publication herein, after hearing the evidence, finds due diligence has been exercised in the examination of all reasonably available sources at hand, and that the service of process by publication to all such heirs should be and is hereby approved as meeting the minimum requirements of state and federal due process.

If the court should find that reasonable diligence has not been exercised in ascertaining the names and addresses of the heirs of the decedent, in which event the publication notice given would be insufficient to confer jurisdiction on the probate court over the

necessary parties, the hearing to admit the will to probate should be abandoned, and the petitioner should be ordered to exercise reasonable diligence in the matter so that the requirements of due process are met and jurisdiction over the necessary parties is conferred upon the probate court before proceeding to a hearing on the petition to admit the will to probate.

The foregoing would give substance to the law announced by our prior decisions, and it would give the bench and bar some meaningful guidance in probate practice. It would help to eradicate what some practitioners regard as mere formalities or legal fiction, which the court in its opinion seems to condone.

If the Supreme Court permits the shoddy practice indicated by the record herein to continue in the probate court without adequate direction from the court itself, one mistake will lead to another, and litigation will continue to persist in matters affecting real estate titles.

Based upon my views herein expressed, I agree with the reversal of the judgment of the trial court and a remand of the case with the direction given.